1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANNY ATTERBURY,

11          Petitioner,            No. CIV S-03-1809 GEB DAD P

12      vs.

13   DAVE GRAZINI,

14          Respondent.           FINDINGS & RECOMMENDATIONS

15   _____/

16          Petitioner, who is confined at Napa State Hospital, is proceeding pro se with a

17   third amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner

18   raises a number of challenges relating to a 1989 judgment of conviction entered against him in El

19   Dorado County Superior Court on charges of attempted murder, with enhancements for the

20   infliction of great bodily injury.  The judgment of conviction was entered pursuant to petitioner's

21   plea of not guilty by reason of insanity.  Specifically, petitioner seeks relief on the grounds that:

22   (1) he should be released from custody because he has already served his sentence of twelve

23   years and four months and his time credits have been miscalculated; (2) he is actually innocent of

24   the charged crimes because evidence that was not presented to the trial court proves that his

25   conviction was based on "false testimony and misleading evidence;" (3) he should be allowed to

26   withdraw his plea of not guilty by reason of insanity and be released from custody because he

1

1    was not informed of the consequences of his plea nor that his confinement could be extended

2    "for life;" (4) he was incompetent during the state court proceedings and should therefore be

3    allowed to withdraw his plea; (5) his plea should be set aside because he was not informed that,

4    as a result thereof, he would be forced to take psychiatric drugs which cause "catastrophic side-

5    effects;" (6) he was denied the right to a jury trial when he entered his plea; (7) his plea was

6    involuntary because he was not informed that his confinement could be extended beyond the

7    maximum term of the sentence imposed; and (8) his sentence has been "enhanced more than

8    once arising out of the same conduct, and that is unconstitutional."

9          Upon careful consideration of the record and the applicable law, the undersigned

10   will recommend that petitioner's application for habeas corpus relief be denied.

11                            PROCEDURAL BACKGROUND

12         On August 30, 1989, after waiving his right to a jury trial, petitioner submitted the

13   matter of his guilt to the state trial court on the preliminary hearing transcript and pled not guilty

14   and not guilty by reason of insanity to two counts of attempted murder, with enhancements for

15   the infliction of great bodily injury.  (Lodged document entitled "Reporter's Transcript on

16   Augmented Appeal" (hereinafter RTA) at 1, 4, 16-17; lodged document entitled "Reporter's

17   Transcript of Proceedings on Judgment and Sentence" (hereinafter RTJ) at 1.)  Based on his plea,

18   the El Dorado County Superior Court found petitioner "guilty, but not guilty by reason of

19   insanity."  (Id.)  On that same date, the trial court referred the matter to the community program

20   director of the Conditional Release Program to prepare a recommendation as to whether

21   petitioner should be placed on out-patient status or confined in a state hospital or other treatment

22   facility.  (RTA at 17.)  On September 20, 1989, after receiving the director's report, the trial court

23   committed petitioner to the custody of Atascadero State Hospital for the maximum term or until

24   such time as petitioner regained his sanity.  (RTJ at 2.)

25         Petitioner filed a timely appeal of his conviction.  However, on June 27, 1990,

26   petitioner and his attorney requested that the appeal be dismissed.  (Respondent's July 29, 2004

                                          2

1   motion to dismiss (MTD), Ex. B.)  Pursuant to that request, petitioner's appeal was dismissed on

2   July 2, 1990.  (Id., Ex. C.)  Approximately thirteen years later, on March 14, 2003, petitioner

3   filed a petition for a writ of habeas corpus in the California Court of Appeal for the Third

4   Appellate District.  (Id., Ex. D.)  On March 20, 2003, that petition was denied "as moot."  (Id.,

5   Ex. E.)  On July 8, 2003, petitioner filed a second petition for a writ of habeas corpus in the

6   California Court of Appeal.  (Id., Ex. F.)  That petition was summarily denied on August 25,

7   2003.  (Id., Ex. G.)

8          On August 21, 2003, petitioner filed a petition for a writ of habeas corpus in the

9   California Supreme Court.  (Id., Ex. H.)  Therein, he requested that the trial judge be recused and

10  that his court-appointed counsel be removed from his case.  (Id. Ex. I.)  Petitioner also argued

11  that his plea of not guilty by reason of insanity was entered in violation of his constitutional

12  rights, and that evidence not presented to the court would prove that prosecution witnesses had

13  testified falsely.  (Id., Ex. H.)  The petition was summarily denied on August 25, 2003.  (Id., Ex.

14  I.)  On August 27, 2003, petitioner filed a second habeas petition with the California Supreme

15  Court raising substantially the same claims.  (Id., Ex. J.)  That petition was summarily denied on

16  September 17, 2003 with a citation to In re Robbins, 18 Cal. 4th 770, 780 (1998).  (Id., Ex. K.)

17         Petitioner filed the instant federal petition for a writ of habeas corpus on

18  September 2, 2003.

19                                    FACTUAL BACKGROUND

20         On January 1, 1989, Robin Bowerman returned to her mobile home in Pollock

21  Pines with her friend, Steven Sebben.  (Answer, lodged document entitled Reporter's Transcript

22  of Preliminary Hearing, at 77-81.)  When she opened the front door, she saw petitioner inside the

23  trailer, pointing a gun at her face.  (Id. at 82.)  As Ms. Bowerman tried to block her head with her

24  hand, petitioner fired a shot that went into her hand and exited near her wrist.  (Id. at 85-86.)  A

25  second shot fired by petitioner lodged in her shoulder area.  (Id. at 86-88.)

26  /////

3

1   Petitioner then stepped out of the trailer and shot Mr. Sebben in the shoulder.  (<u>Id.</u>

2   at 121-25.)  Sebben tried to grab the gun from petitioner and a struggle ensued.  (<u>Id.</u> at 125.)

3   Petitioner shot two more times and then ran away.  (<u>Id.</u> at 125-26.)  Mr. Sebben suffered a

4   fracture in his arm as a result of the struggle with petitioner.  (<u>Id.</u> at 125.)

5   The investigating officer determined that at least five shots were fired at the scene.

6   (<u>Id.</u> at 151-52.)

7   ANALYSIS

8   I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

9   A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

10   some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860,

11   861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v.</u>

12   <u>Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

13   interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

14   <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas

15   corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377

16   (1972).

17   This action is governed by the Antiterrorism and Effective Death Penalty Act of

18   1996 ("AEDPA").  <u>See</u> <u>Lindh v.Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

19   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

20   habeas corpus relief:

21   An application for a writ of habeas corpus on behalf of a
    person in custody pursuant to the judgment of a State court shall
22   not be granted with respect to any claim that was adjudicated on
    the merits in State court proceedings unless the adjudication of the
23   claim -

24   (1) resulted in a decision that was contrary to, or involved
    an unreasonable application of, clearly established Federal law, as
25   determined by the Supreme Court of the United States; or

26   /////

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II.  Petitioner's Claims

A.  Procedural Default

As described above, petitioner alleges eight claims in the instant petition.  In his August 27, 2003, habeas petition filed in the California Supreme Court, petitioner raised the first seven claims that he has presented to this court.  The California Supreme Court denied that petition, citing In re Robbins, 18 Cal. 4th at 780.  (MTD, Ex. K.)  Respondent argues that the California Supreme Court's citation to Robbins constitutes a state procedural bar precluding this court from addressing the merits of petitioner's claims 1 through 7.

When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the exhaustion requirement is satisfied, but the federal claims are procedurally barred.  Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Casey v. Moore, 386 F.3d 896, 920 (9th Cir. 2004).  Similarly, if a federal

5

constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted.  Coleman, 501 U.S. at 729-30; Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003).  Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice.  Coleman, 501 U.S. at 750.  A reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim where the default issue turns on difficult questions of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"); Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004).  Under the circumstances presented here, this court finds that petitioner's claims 1 through 7 can be resolved more easily by addressing them on the merits.  Accordingly, this court will assume that petitioner's claims are not procedurally defaulted and will address them on the merits.

B. Should Petitioner be Released Because he has Served his Full Sentence?

Petitioner argues he should be released from custody because he has already served his sentence of twelve years and four months.  He also claims that he has been deprived of "about" two years of credits for time served.  ("Addendum to Third Amended Petition" (P&A) at consecutive p. 3.)  Respondent argues that petitioner was sentenced to imprisonment for a term of fifteen years and four months, not twelve years and four months, and that his sentence has not expired.  Respondent also states that he is unable to respond to the extent this claim concerns time credits because petitioner has failed to provide sufficient facts in support of this claim, such as "for what time periods he is referring between 1989 and the date of the petition."  (Answer at 9.)

1          The state court record reflects that petitioner was advised twice by the prosecutor

2    at his change of plea hearing that if he was found guilty of all the counts and allegations against

3    him, he would receive a prison sentence of "fifteen years, four months."  (RTA at 3-4, 9.)

4    Petitioner stated that he understood.  (Id. at 4, 9.)  At petitioner's sentencing hearing on

5    September 20, 1989, the following exchange took place:

6          THE COURT:  For present purposes, is it counsel's understanding
           that we must now fix a maximum term of which [petitioner] can be
7          confined?

8          MR. SUDMAN (petitioner's counsel):  Yes.  We also should give
           him credit for the days he's actually served.  I don't think he gets
9          credit for good time/work time.

10         MR. HEAPE (the prosecutor):  That's correct.

11         THE COURT:  Mr. Warchol, do you have those figures?

12         THE PROBATION OFFICER:  No, I don't, your Honor, but I
           could get them today.  That would be statutory.
13
           THE COURT:  Add those to the Court's order.
14
           Is there any further cause why we shouldn't now pronounce
15         judgment in this matter?

16         MR. SUDMAN:  No, your Honor.

17         THE COURT:  Mr. Atterbury, the Court having found you not
           guilty by reason of insanity, then has the obligation of the law to
18         commit you to the custody of the Director of Corrections at
           Atascadero, confinement there for a potential maximum term of, is
19         it 13 years?

20         MR. SUDMAN:  We came up with 15 and one-third years.

21         THE COURT:  That's the maximum term.  You can be brought
           back to court earlier than that, Mr. Atterbury, if you are certified to
22         be sane, and, of course, you have other remedies counsel can
           inform you of, periodic review of your status, mental status, and
23         that sort of thing as provided by law.

24         For present purposes, that will be the order, confine you for that
           time period, Mr. Atterbury, until you regain your sanity in this
25         matter.

26   (RTJ at 1-2.)

7

1    The September 20, 1989 minute order following the sentencing hearing reflects

2    that the trial court found petitioner's maximum term to be twelve years and four months, with

3    209 days credit for time previously served.  (Answer, lodged document No. 13, entitled "Minute

4    order issued by El Dorado County Superior Court on September 20, 1989" (hereinafter Sept. 20,

5    1989 minute order)).  (Id.)  However, on November 29, 1989, the trial court issued a correction

6    to the September 20, 1989 minute order to reflect that the sentence imposed was actually fifteen

7    years and four months, with credit for 212 days for time previously served.  (Answer, lodged

8    document No. 15, entitled "Minute Order issued by El Dorado County Superior Court on

9    November 28, 1989" (hereinafter Nov. 28, 1989 minute order)).

10    In his traverse, petitioner argues that "judicial errors cannot be corrected" and that,

11    in any event, the lapse of time between the date of sentencing and the correction of the state court

12    record caused the Superior Court's jurisdiction to "expire."  (Traverse at 12.)  These contentions

13    are meritless.  The California Superior Court had jurisdiction to correct the minute order of

14    September 20, 1989 to reflect the actual sentence imposed in petitioner's case and it did so by

15    issuing the November 28, 1989 minute order.  People v. Mitchell, 26 Cal. 4th 181, 185 (2001)

16    ("Courts may correct clerical errors at any time, and appellate courts (including this one) that

17    have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that

18    did not accurately reflect the oral judgments of sentencing courts."); In re Candelario, 3 Cal. 3d

19    702, 705 (1970).[1]

---

[1]  Petitioner argues that even his appellate counsel believed, as petitioner does, that he
was sentenced to twelve years and four months in prison, and not fifteen years and four months.
In support of this contention, petitioner directs the court's attention to the opening brief filed on
his behalf on appeal, in which appellate counsel stated that petitioner was "committed to the state
mental hospital for a maximum term of 12 years, four months, minus a credit of 209 days for
time served."  (Traverse at 11.)  Neither the Clerk's Transcript on Appeal nor petitioner's
opening brief on appeal have been provided to this court by the parties.  However, even assuming
that appellate counsel made the statement in the opening brief attributed to him by petitioner, the
state court records provided by respondent demonstrate that counsel would have simply been in
error regarding the length of petitioner's sentence.  It is clear from the November 28, 1989
minute order, from the transcripts of the change of plea and sentencing proceedings and from the
trial court's Report of Indeterminate Sentence filed September 29, 1989, that petitioner was in

1         Accordingly, petitioner's argument that he was sentenced to only twelve years

2  and four months lacks a factual basis and should be rejected.

3         With respect to his claim regarding the state court's failure to give him the correct

4  amount of credit for time served, petitioner makes the following argument:

> Petitioner's sentence and maximum commitment date actually
> expired and was completed well over a year ago, because the
> length of his sentence is incorrectly computed or calculated, and
> also and in addition, because Petitioner was not given credit for
> time served while compelled to live in (virtual) locked facilities
> and halfway houses, while under the supervision of the Forensic
> Conditional [Outpatient Treatment] Release Program (CONREP),
> on two different occasions while under two different outpatient
> programs (Solano & Placer Counties), and he was not given credit
> for time served on this.  (People v. Dias, 170 Cal.App.3d 756, 216
> Cal.Rptr. 295 (1985).
>
> Additionally, at one point in time in or about the years 1993-1994,
> Petitioner was made to reside in Napa State Hospital although he
> was technically on [El Dorado County Superior] Court ordered
> outpatient treatment release status and supervision.  Petitioner even
> petitioned the El Dorado Court to count this time as inpatient
> custody time so he could qualify for a jury trial years ago under
> Penal Code § 1026.2; but the El Dorado Court ruled the time
> Petitioner spent in custody at Napa State Hospital, although while
> technically on Court ordered outpatient treatment status, was to be
> counted as inpatient time and thus denied Petitioner a jury trial
> under Penal Code § 1026.2.  Petitioner does not believe he was
> given credit for this time served against his maximum sentence and
> commitment even though he was residing in Napa State Hospital
> and the El Dorado Court ruled that period of time to be counted as
> inpatient custody time.

19  (Traverse at 12-13.)  In support of his arguments regarding time credits, petitioner refers the court

20  to:

> the document in his El Dorado Court file No. 53460, dated July 22,
> 1994, and titled "ORDER GRANTING MOTION TO VACATE
> JURY TRIAL," that was held before the Honorable Charles E.
> Goff, assigned [El Dorado Court] Judge, and please see the
> document dated April 24, 1995, titled "STATEMENT OF

_____

fact sentenced by the court to fifteen years and four months in the custody of the Director of
Corrections at Atascadero State Hospital.  (See Lodged document entitled "Report-Indeterminate
Sentence Filed September 29, 1989; RTJ at 2; and Lodged Minute Order Issued November 28,
1989.)

1    REASONS FOR DENIAL OF PETITION, C.R.C. 260(E) AND
     RULING ON REQUEST FOR REVOCATION OF
2    OUTPATIENT STATUS (COMBINED HEARINGS)" that was
     held before the Honorable Lloyd B. Hamilton, assigned [El Dorado
3    County Superior Court] Judge, for verification of Petitioner's
     contentions.  (See the El Dorado Superior Court Reporter's
4    Transcript.)

5    (Id., at 13 n.6.)

6           Petitioner's claim that he has not been accurately credited for time served is

7    unduly vague.  Relief should be denied on that basis.  While petitioner has described a document

8    which may lend some support to his allegations, he has not provided any actual documentation

9    establishing that he was entitled to credits in the amount of "about" two years for the time spent

10   in "virtual" locked facilities, or providing support for his "belief" that he was not given credit for

11   time he was "made to reside" in a state hospital even though he was "technically" on outpatient

12   status.  Petitioner's vague allegations in this regard, without reference to any documents before

13   the court, are insufficient to establish federal habeas relief.  See Jones v. Gomez, 66 F.3d 199,

14   204 (9th Cir. 1995) ("It is well-settled that '[c]onclusory allegations which are not supported by a

15   statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26

16   (9th Cir. 1994)).  This court also notes that petitioner has apparently not been found to be

17   qualified for release under California law.  See Cal. Penal Code §§ 1026.2 and 1026.5.[2]

18
     _____

19          [2] The undersigned observes that plaintiff has filed at least ten actions over the course of
     approximately the last fifteen years, all presenting challenges to his continued confinement or to
20   state proceedings pursuant to California Penal Code § 1026.2 or § 1026.5.  See Atterbury v.
     Chapa, No. CIV S-92-2070 EJG GGH (voluntarily dismissed Nov. 6, 1995, after stay
21   recommended); Atterbury v. Turley, No. CIV S-95-0050 EJG GGH (voluntarily dismissed Feb.
     8, 1995); Atterbury v. Turley, No. 95-0578 WBS GGH (voluntarily dismissed Aug. 31, 1995,
22   after receiving leave to amend); Atterbury v. El Dorado County Jail, No. CIV S-02-2272 FCD
     JFM (dismissed Jan. 31, 2003, for failure to keep the court apprised of a current address);
23   Atterbury v. Grazini, No. CIV S-03-1809 GEB DAD (pending); Atterbury v. Grazaini, No. CIV
     S-05-1059 FCD DAD (transferred June 3, 2005, to another court); Atterbury v. Grazaini, No.
24   CIV S-05-1062 LKK DAD (voluntarily dismissed Aug. 15, 2005, after petition dismissed for
     failure to allege habeas claims); Atterbury v. Van Diver, No. CIV S-05-1365 DAD (pending);
25   Atterbury v. Grazaini, No. CIV S-05-1618 FCD PAN (dismissed Mar. 3, 2006 for failure to
     exhaust state court remedies); Atterbury v. Weiner, No. CIV S-05-2383 LKK DAD P (dismissed
26   Nov. 30, 2006 as frivolous and for failure to state a claim upon which relief can be granted);
     Atterbury v. Grazaini, No. CIV S-06-1153 FCD PAN (summarily dismissed Sept. 20, 2006).

1    Accordingly, notwithstanding the fact that his underlying maximum sentence may

2  have expired, petitioner has not established that he is entitled to be released.  For the foregoing

3  reasons, petitioner is not entitled to relief on his first claim in which he alleges that he has served

4  his complete sentence and is entitled to immediate release from confinement.

5    C.  Actual Innocence

6    Petitioner next claims that evidence not presented to the trial court proves that his

7  conviction "was based on false testimony and misleading evidence."  (P&A at consecutive p. 3.)

8  Petitioner's claim in this regard has been construed by this court in a previous order as a claim of

9  actual innocence.  (See Order dated January 25, 2005, at 11.)

10    Petitioner's habeas petition filed with the California Supreme Court on August 27,

11  2003, explains the basis for this claim as follows:

12    The witnesses gave the police one version of the incident in which
they contradicted one another.  But after having ample time to

13    discuss the matter before the preliminary hearing, their stories had
been changed to match.

14

15    At the preliminary hearing, prosecution witness Bowerman
testified that upon opening a front door (to a trailer home) and

16    observing me inside, I allegedly immediately fired a gun shooting
her in the hand.  Next, she said that [I] fired a second shot striking

17    her in the shoulder.  Witness Bowerman then said that I then turned
the gun and shot witness Sebben in the shoulder.  When witness

18    Sebben testified he said the same things.  That story contradicts
what they both told the police, on more than one occasion prior to
the preliminary hearing.

19

20    An x-ray report of Bowerman's shoulder proves that both of the
stories of the prosecution witnesses portray a physical

21    impossibility.  The report of Dr. Robert Bittle, one of the mental
health experts who examined me in 1989 to ascertain if I was

22    insane at the time of the alleged crime, adds validity to the
statement that both prosecution witnesses lied to the court.

23    Following Dr. Bittle's psychiatric examination, he investigated the
things that I had told him [sic] during his examination.  Dr. Bittle

24    then wrote a report about this examination and his investigation on
June 5, 1989.  On pp. 12 & 18, of that report, Dr. Bittle cites the

25    above mentioned x-ray report. (More on this later.)  On pp. 29 &
32, of that same report, it is written that I told Dr. Bittle that I had

26    been in the trailer to collect some of my property while Bowerman

11

was not there, and that witness Sebben had arrived at the trailer and opened the front door.  Dr. Bittle wrote that I told him that when Sebben opened the door, he brandished a gun and I (having been shot before in the abdomen) was afraid that I was going to get shot. Dr. Bittle recorded that I told him that I grabbed a gun and shot Sebben in the shoulder.  Then I said that Bowerman grabbed for the gun and the gun discharged apparently entering and exiting somewhere in Bowerman's hand.  And apparently a "fragment" of the bullet which entered and exited Bowerman's hand lodged in her shoulder.  It is recorded that I explained to Dr. Bittle that the shooting of Bowerman was not intentional.

To paraphrase, the x-ray report of witness Bowerman's shoulder x-ray reveals bullet fragments in the hand and a bullet "fragment" in the shoulder.  If Bowerman's testimony had . . . been true and if I had . . . really shot Bowerman a second time, hitting Bowerman in the shoulder, then there would have been an entire bullet shown in the x-ray of the shoulder, and not just a bullet "fragment."

(Answer, lodged document entitled "Petition for writ of habeas corpus filed August 27, 2003 in the California Supreme Court," attachment at 11-12.)

In the traverse, petitioner states that he told Dr. Bittle he shot Steve Sebben to immobilize him and to prevent him from killing [the petitioner]." (Traverse at 5.)  According to petitioner, he also told Dr. Bittle that Sebben (not Bowerman) grabbed the gun and caused it to fire "accidentally . . . shooting Robin (Bowerman) through the wrist with apparently a fragment lodging in her shoulder." (Id. at 5-6.)  Petitioner states that "the shooting of Bowerman was accidental." (Id. at 4.)  Petitioner argues that the x-ray report proves he did not shoot Ms. Bowerman two times as she testified at the preliminary hearing, but rather that a bullet fragment from the accidental discharge of the firearm lodged in her shoulder.  Petitioner also claims a defense investigator informed him that "logic dictates that Bowerman was shot once, with one bullet, and that bullet struck Bowerman in her wrist and a bullet 'fragment' (from the one and same bullet) then ricocheted and lodged in Bowerman's shoulder." (Id. at 7.)  Petitioner concludes as follows:

this evidence shows that Petitioner was actually innocent of the Bowerman shooting, as he shot Bowerman by accident.  This also shows that had Petitioner been in his right mind and taken this

12

1      matter to trial he could have impeached both witnesses, inter alia,
and not been convicted at all.  This explanation that Petitioner gave
2      to Dr. Bittle and to Mr. O'Farrell (the defense investigator) also
demonstrates that the Sheriff found all three of the bullet casings,
3      contrary to his incorrect estimation, based on the testimony of
Bowerman and Sebben, that five shots were fired.

4

5    (Id.)

6            In Herrera v. Collins, 506 U.S. 390 (1993), a majority of the Supreme Court

7   assumed, without deciding, that the execution of an innocent person would violate the

8   Constitution.  A different majority of the Supreme Court explicitly so held.  Compare 506 U.S. at

9   417 with 506 U.S. at 419 and 430-37.  See also House v. Bell, ___ U.S. ___, 126 S. Ct. 2064,

10   2084 (2006) (declining to resolve whether federal courts may entertain claims of actual

11   innocence but concluding that the petitioner's showing of innocence in that case fell short of the

12   threshold suggested by the Court in Herrera); Jackson v. Calderon, 211 F.3d 1148, 1164 (9th Cir.

13   2000); Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc).  Although the Supreme

14   Court did not specify the standard applicable to this type of "innocence" claim, it noted that the

15   threshold would be "extraordinarily high" and that the showing would have to be "truly

16   persuasive." Herrera, 506 U.S. at 417.  See also Carriger, 132 F.3d at 476.  The Ninth Circuit has

17   determined that in order to be entitled to relief on such a claim a petitioner must affirmatively

18   prove that he is probably innocent.  Jackson, 211 F.3d at 1165; Carriger, 132 F.3d at 476-77.

19            A habeas petitioner's claim of actual innocence must be supported "with new

20   reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts,

21   or critical physical evidence– that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324

22   (1995).  To prevail, a petitioner making an actual innocence claim "must show that, in light of all

23   the evidence, including evidence not introduced at trial, 'it is more likely than not that no

24   reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Majoy v. Roe,

25   296 F.3d 770, 776 (9th Cir. 2002) (quoting Schlup, 513 U.S. at 327).  See also Sistrunk v.

26   Armenakis, 292 F.3d 669, 672-73 (9th Cir. 2002) (en banc) (concluding that petitioner's claim of

1   actual innocence seeking to discredit a prosecution's witness, rather than affirmatively presenting

2   new exculpatory evidence, did not fundamentally call into question the reliability of petitioner's

3   conviction); Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002) (concluding that new

4   evidence raising questions about the victim's motive to lie but not providing evidence regarding

5   the commission of the crime, does not present a colorable claim of actual innocence).

6          The x-ray report with respect to Ms. Bowerman's wounds, relied upon by

7   petitioner in support of this claim, provides in its entirety:

8          CHEST:  An AP film of the chest shows a high density bullet
           fragment overlying the left lung apex which measures about 12
9          mm x 9 mm in diameter.  There is no radiographic evidence of
           pneumothorax, pleural effusion, mediastinal injury or upper rib
10         injury.  An oblique projection of the chest to determine the exact
           location of the bullet fragment, reveals it to be almost on the axis
11         of rotation for the LPO projection indicating a relatively central
           position.  It is definitely not anterior to the clavicle and does not
12         appear to be way posterior.

13         IMPRESSION:  (1) Bullet fragment, left lung apex, which if
           anything is probably in the soft tissues, supraclavicular area or just
14         posterior to that plane.  It is definitely not anterior.
           (2) No cardiopulmonary findings.

15

16  (Third Am. Petition, Attach. X-Ray Report, dated 1-1-89, by Dr. Robert L. Houts.)  As described

17  above, petitioner argues that if he had shot Ms. Bowerman twice, as she testified at his

18  preliminary examination, there would have been an entire bullet in her shoulder and not merely a

19  bullet fragment.  Petitioner contends that since Bowerman lied regarding the number of shots

20  fired, his conviction is invalid and he should be released.

21         This court finds that the x-ray report evidence relied upon by petitioner does not

22  constitute "truly persuasive demonstration" that he is innocent of the charges upon which he was

23  convicted.  Herrera, 506 U.S. at 417.  As noted in this court's order filed January 25, 2005, the x-

24  ray report is simply evidence that could have been used to impeach Ms. Bowerman as to her

25  version of the events surrounding the shooting.  It does not establish that petitioner's version of

26  the events is accurate.  Although the report describes a bullet fragment, not an intact bullet, in

14

1   Ms. Bowerman's shoulder, it does not offer any conclusion as to the number of times Ms.

2   Bowerman was shot, where the gunshot wound or wounds were inflicted, or whether petitioner

3   fired the shots accidentally or deliberately.  In short, the report does not provide direct evidence

4   regarding the commission of the crime nor does it fundamentally call into question the reliability

5   of petitioner's conviction.  Accordingly, petitioner is not entitled to relief on his claim of actual

6   innocence.

7          D.   Involuntary Plea

8          Petitioner claims that his plea of not guilty by reason of insanity was involuntary

9   and should be set aside.  In three separate claims petitioner alleges that: (1) he was not informed

10   of the consequences of his plea or that his confinement could be extended "for life;"  (2) he was

11   not informed that, as a result of his plea, he would be forced to take psychiatric drugs which

12   cause "catastrophic side-effects;" and (3) he was not informed that his confinement could be

13   extended beyond the maximum term of the sentence imposed.

14          A guilty plea must be knowing, intelligent and voluntary.  Brady v. United States,

15   397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).  "The voluntariness of

16   [a petitioner's] guilty plea can be determined only by considering all of the relevant

17   circumstances surrounding it."  Brady, 397 F.2d at 749.  In Blackledge v. Allison, 431 U.S. 63

18   (1977), the Supreme Court addressed the presumption of verity to be given the record of plea

19   proceeding when the plea is subsequently subject to a collateral challenge.  While noting that the

20   defendant's representations at the time of his guilty plea are not "invariably insurmountable"

21   when challenging the voluntariness of his plea, the Supreme Court stated that the defendant's

22   representations, as well as any findings made by the judge accepting the plea, "constitute a

23   formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in

24   open court carry a strong presumption of verity."  431 U.S. at 74.  See also Marshall v.

25   Lonberger, 459 U.S. 422, 437 (1983) (plea presumed valid in habeas proceeding where the

26   /////

15

1  defendant was represented by counsel); <u>Little v. Crawford</u>, 449 F.3d 1075, 1081 (9th Cir. 2006);

2  <u>Chizen v. Hunter</u>, 809 F.2d 560, 561 (9th Cir. 1986).

3          After a review of the record in this case, the undersigned concludes that

4  petitioner's plea of not guilty by reason of insanity was voluntarily made, with knowledge of the

5  consequences thereof.  There was a full and complete colloquy between the court and petitioner

6  at the time he entered his plea.  (RTA at 2-17.)  Of particular relevance to the claim before this

7  court, petitioner was advised that "by pleading not guilty by reason of insanity, if the Court found

8  that you were insane at the time you committed these offenses, the Court could sentence you and

9  you could remain in the State hospital for the rest of your life."  (<u>Id.</u> at 4.)  Petitioner stated that

10  he understood this.  (<u>Id.</u>)  Petitioner was also advised that "after your period of maximum

11  confinement, which would be fifteen years, four months, possibly, and if you still hadn't

12  recovered your sanity, the prison officials could keep you there."  (<u>Id.</u> at 10.)

13          In addition to these advisements, petitioner voluntarily waived his rights to a jury

14  trial, to confront his accusers, and against self-incrimination.  (<u>Id.</u> at 4, 6-9.)  <u>See</u> <u>Boykin</u>, 395

15  U.S. at 243.  Petitioner also had notice of the nature of the charges against him.  (RTA at 1-3.)

16  <u>See</u> <u>Lonberger</u>, 459 U.S. 422, 436 (1983) ("the first and most universally recognized requirement

17  of due process" is that an accused receive notice of the nature of the charge against him) (quoting

18  <u>Smith v. O'Grady</u>, 312 U.S. 329, 334 (1941)).  Where the record reflects the accused's

19  understanding of these matters, that is sufficient for purposes of federal habeas review.

20  <u>Lonberger</u>, 459 U.S. at 436.

21          Petitioner also claims that his plea was involuntary because he was not

22  specifically advised that he would be required to take psychiatric drugs with "catastrophic side-

23  effects" while he was confined in a state hospital.  However, state courts are not required to

24  advise criminal defendants of all collateral consequences of a plea or of all possible ancillary or

25  consequential results which may flow therefrom.  <u>Torrey v. Estelle</u>, 842 F.2d 234, 235 (9th Cir.

26  1988); <u>see also</u> <u>United States v. Littlejohn</u>, 224 F.3d 960, 965 (9th Cir. 2000) (under federal law,

16

1 court not required to advise defendants of the collateral consequences of their pleas).  Whether or

2 not petitioner would be required to take medication and/or the possible side-effects of any

3 particular medication was not known to the trial court and is, at most, a collateral consequence of

4 his plea of not guilty by reason of insanity.  Petitioner was made well aware of the fact that he

5 would receive mental health treatment as a result of his plea of not guilty by reason of insanity.

6 (See RTA at 16-18; Reporter's Transcript of Proceedings on Judgment and Sentence at 2.)  His

7 belated claim of ignorance of the fact that such treatment could include medication with possible

8 side-effects does not deprive the plea of its voluntary character.  United States v. Brownlie, 915

9 F.2d 527, 528 (9th Cir. 1990); Torrey, 842 F.2d at 235.

10   For all of the foregoing reasons, petitioner is not entitled to relief on his claim that

11 his plea of not guilty by reason of insanity was involuntary.

12   E.  Competence to Enter Plea

13   Petitioner claims that he was not competent when he entered his plea of not guilty

14 by reason of insanity.  Petitioner states that he was "under the forced influence of powerful mind

15 altering psychiatric drugs while in jail and before he was committed to the mental institution,"

16 and he advises this court that "two mental health examiners concluded that he was incompetent

17 to stand trial." (Traverse at 18.)  Petitioner argues that, under those circumstances, the state trial

18 court should have "stop[ped] the proceedings" and "h[e]ld a formal competency hearing."  (Id.)

19   The conviction of a legally incompetent defendant violates the Due Process

20 Clause of the Fourteenth Amendment.  Cooper v. Oklahoma, 517 U.S. 348, 354 (1996);

21 Cacoperdo v. Demosthenes, 37 F.3d 504, 510 (9th Cir. 1994).  The test for competency is

22 "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable

23 degree of rational understanding and has a rational as well as factual understanding of the

24 proceedings against him." Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Dusky v.

25 United States, 362 U.S. 402, 402 (1960)).  See also Douglas v. Woodford, 316 F.3d 1079, 1094

26 /////

1    (9th Cir. 2003).  The standard for competency to enter a guilty plea is the same as the standard to

2    stand trial.  Godinez, 509 U.S. at 397.

3            "In a habeas proceeding, a petitioner is entitled to an evidentiary hearing on the

4    issue of competency to stand trial if he presents sufficient facts to create a real and substantial

5    doubt as to his competency, even if those facts were not presented to the trial court."  Deere v.

6    Woodford, 339 F.3d 1084, 1086 (9th Cir. 2003) (quoting Boag v. Raines, 769 F.2d 1341, 1343

7    (9th Cir. 1985)).  See also Douglas, 316 F.3d at 1094.  A "good faith" or "substantial doubt"

8    exists in this regard  "when there is substantial evidence of incompetence."  Deere, 339 F.3d at

9    1086 (quoting Cuffle v. Goldsmith, 906 F.2d 385, 392 (9th Cir. 1990)).  The burden of

10   establishing mental incompetence rests with the petitioner.  Boag, 769 F.2d at 1343; McKinney

11   v. United States, 487 F.2d 948, 949 (9th Cir. 1973).

12           Whether a defendant is capable of understanding the proceedings and assisting

13   counsel depends on "evidence of the defendant's irrational behavior, his demeanor in court, and

14   any prior medical opinions on competence to stand trial."  Drope v. Missouri, 420 U.S. 162, 180

15   (1975).  None of these factors is determinative, but any one of them may be sufficient to raise a

16   reasonable doubt regarding competence.  Id.  Finally, the Due Process Clause requires a state trial

17   court to inquire into a defendant's competency sua sponte if a reasonable judge would be

18   expected to have a bona fide doubt as to the defendant's competence.  Pate v. Robinson, 383 U.S.

19   375, 385 (1966); Blazak v. Ricketts, 1 F.3d 891, 893 & n.1 (9th Cir. 1993); United States v.

20   Lewis, 991 F.2d 524, 527 (9th Cir. 1993).

21           At the hearing where he entered his plea of not guilty by reason of insanity,

22   petitioner stated that even though he was taking "antipsychotic" medication, he understood

23   everything he had been told at the hearing.  (RTA at 13-14.)  Petitioner explained that the

24   medication he was taking was "helping [him] to understand [the proceedings] better."  (Id. at 14.)

25   When asked by the trial judge whether he had any questions about what was going on in those

26   /////

18

proceedings, petitioner responded that he had no questions and stated "basically, I think I know what's happening here." (Id.) The following colloquy then occurred:

> THE COURT: I would like to preliminarily, before I determine the question of guilt here, to state for the record my awareness that one of the doctors, I believe Dr. Dougherty, had indicated, volunteered in his report his opinion, at least at that time, that the Defendant was not competent to stand trial, and I brought that to the attention of counsel. Was it Dr. Dougherty?

> MR. SUDMAN: I was looking for the verbiage just as we started the proceedings, and I couldn't find it.

> THE COURT: Page four, bottom of the page. Even though that question was not requested, question was not asked by the Court, Dr. Dougherty volunteered that opinion.

> And I wish Mr. Sudman would state for the record his agreement or disagreement with that matter.

> MR. SUDMAN: As I indicated to the Court in Chambers, I've been able to talk about the case with my client. I feel that his condition has substantially improved because he has been taking medication while incarcerated at the County jail. In my opinion, I have no doubt that he can understand the proceedings. He can intelligently discuss the case with me, and I feel that he's been intelligently able to discuss and understand the procedural aspects of the case, and I do not feel that he comes within the meaning of Penal Code Section 1368.

> THE COURT: The Court would also note for the record that the Defendant, himself, has acknowledged that he understands these proceedings and understands them well.

> Therefore, the Court will declare there is no doubt but that the Defendant understands the proceedings and he's competent to stand trial.

(Id. at 14-15.)

As this exchange demonstrates, petitioner, his counsel, and the court were all in agreement that petitioner understood the proceedings, was able to assist his counsel, and was competent to enter his plea. Neither the evidence before the trial judge, the circumstances, nor the conduct of the proceedings themselves at the time petitioner entered his plea gave rise to a bona fide doubt about petitioner's competence at that time. Petitioner did not exhibit any

1   irrational behavior, nor was the court confronted with any evidence at the time of the hearing that

2   raised a question as to petitioner's competence to enter his plea.  Cf. Blazak, 1 F.3d at 897

3   (competency hearing should have been conducted where state trial court had records before it

4   explaining defendant's extensive history of mental illness and previous adjudications of

5   incompetency, and there was no finding of competency at the time of defendant's trial); Chavez

6   v. United States, 656 F.2d 512, 515 (9th Cir. 1981) (evidentiary hearing required where petitioner

7   had a history of antisocial behavior and treatment for mental illness, petitioner had several

8   emotional outbursts in court, there was a previous psychiatric finding of insanity based upon

9   psychoneurosis and the use of drugs, and an inference drawn from the fact that petitioner pled

10  guilty without even attempting to plea bargain).

11         While the record in this case supports the assertion that petitioner was taking

12  medication and that he had previously been determined to be incompetent to stand trial by at least

13  one doctor, these facts did not automatically render him incompetent to enter his plea of not

14  guilty by reason of insanity.  "The mere fact that a defendant took mood-altering medication is

15  not sufficient to vitiate his plea.  There must be some evidence that the medication affected his

16  rationality."  United States v. Pellerito, 878 F.2d 1535, 1542 (1st Cir. 1989).  Here, the

17  medication taken by defendant was designed to improve his cognitive state.  See United States v.

18  Buckley, 847 F.2d 991, 999 (1st Cir. 1988) (record supported conclusion that the medication

19  defendant claimed had impacted his ability to voluntarily plead guilty in fact was designed to

20  make the defendant more rational).  As noted above, petitioner confirmed at the hearing that the

21  prescribed medication was enabling him to better understand the proceedings.

22         There is also no evidence that anyone present at the hearing when petitioner

23  entered his plea perceived that he was suffering ill effects from his medications or was otherwise

24  unable to comprehend the proceedings.  Neither counsel raised a question as to petitioner's

25  competency during the change of plea hearing.  Rather, as set forth in the colloquy quoted above,

26  petitioner's counsel assured that court that since beginning a medication regimen following his

20

1  incarceration, petitioner's condition had substantially improved and that counsel had no doubt

2  that petitioner was competent to enter his plea at that time.   See Medina v. California, 505 U.S.

3  437, 450 (1992) ("defense counsel will often have the best-informed view of the defendant's

4  ability to participate in his defense"); United States v. Lewis, 991 F.2d 524, 528 (9th Cir. 1993)

5  (a defense counsel's silence on the petitioner's competency is some evidence that the petitioner

6  showed no signs of incompetence at that time); Hernandez v. Ylst, 930 F.2d 714, 718 (9th Cir.

7  1991) ("[w]e deem significant the fact that the trial judge, government counsel, and Hernandez's

8  own attorney did not perceive a reasonable cause to believe Hernandez was incompetent");

9  United States v. Clark, 617 F.2d 180, 186 (9th Cir. 1980) (fact that defendant's attorney

10  considered defendant competent to stand trial was significant evidence that defendant was

11  competent); United States v. McKoy, 645 F.2d 1037, 1039 (D.C. Cir. 1981) (district court did not

12  abuse its discretion in refusing to allow a defendant to withdraw his plea, where the defendant

13  was claiming his guilty plea was involuntary because he was taking anti-anxiety medication at

14  the time, since the court had the opportunity to personally observe defendant).

15          Under the circumstances presented here, the trial court had no substantial reason

16  to doubt petitioner's competence to enter his plea of not guilty by reason of insanity.

17  Accordingly, petitioner's claim that the trial court had a duty to conduct a sua sponte competency

18  hearing prior to entry of the plea should be rejected.

19      F.  Denial of Right to Jury Trial

20          Petitioner's sixth claim for relief is stated, in its entirety, as follows:

21          The petitioner should be entitled to a jury trial for release because
          when he entered his insanity plea, the law as it was written when

22          he entered the insanity plea, was supposed to change to provide for
          a jury trial.  The law did not change, and this is some sort of an

23          unconstitutional ex post facto matter.

24  (P&A at consecutive p. 4.)  In his traverse, petitioner explains further that California Penal Code

25  § 1026.2, which sets forth the procedure for consideration of applications for release by persons

26  who have been committed to a state hospital or other treatment facility based upon a claimed

1   restoration of sanity, was expected to change to provide for a jury trial upon application for early

2   release.  (Traverse at 19.)  However, according to petitioner, "the law did not revert back and

3   take effect again as it was supposed to," but rather remained as it was, to the effect that "an

4   insanity acquittee must first demonstrate for one year, while under supervision and treatment in

5   the community, that he or she is no longer a danger to self or others, before being eligible for a

6   jury trial for unconditional release."  (Id.)

7           Petitioner's claim that California Penal Code § 1026.2 was not amended to

8   provide for a jury trial, as he expected, does not state a cognizable ex post facto claim.  The

9   Constitution provides that "No State shall ... pass any ... ex post facto Law." U.S. Const. art. I, §

10  10.  A law violates the Ex Post Facto Clause if it: (1) punishes as criminal an act that was not

11  criminal when it was committed; (2) makes a crime's punishment greater than when the crime

12  was committed; or (3) deprives a person of a defense available at the time the crime was

13  committed.  Carmell v. Texas, 529 U.S. 513, 537-38 (2000); Collins v. Youngblood, 497 U.S.

14  37, 52 (1990); United States v. Bischel, 61 F.3d 1429, 1435 (9th Cir. 1995).  The Ex Post Facto

15  Clause "is aimed at laws that retroactively alter the definition of crimes or increase the

16  punishment for criminal acts."  Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003) (quoting

17  Souch v. Schaivo, 289 F.3d 616, 620 (9th Cir. 2002)).  See also Cal. Dep't of Corr. v. Morales,

18  514 U.S. 499, 504 (1995).  The Ex Post Facto Clause is also violated if: (1) state regulations have

19  been applied retroactively to a defendant; and (2) the new regulations have created a "sufficient

20  risk" of increasing the punishment attached to the defendant's crimes.  Himes, 336 F.3d at 854.

21  Not every law that disadvantages a defendant is a prohibited ex post facto law.  In order to

22  violate the clause, the law must essentially alter "the definition of criminal conduct" or increase

23  the "punishment for the crime."  Lynce v. Mathis, 519 U.S. 433, 441-42 (1997).  See also

24  Morales, 514 U.S. at 504, 506-07 & n.3.  Petitioner has failed to demonstrate that the failure, if

25  any, of the California Legislature to provide for a jury trial under Penal Code § 1026.2 altered the

26  /////

1    definition of the crimes with which he was charged or increased his punishment for those crimes.

2    Accordingly, petitioner's ex post facto claim should be rejected.

3           In addition, any claim that the California legislature should have, but failed to

4    amend California Penal Code § 1026.2 does not state a federal constitutional claim.  As

5    explained above, a federal writ is not available for alleged error in the interpretation or

6    application of state law.  See Estelle v. McGuire, 502 U.S. at 67-68; Park, 202 F.3d at 1149;

7    Middleton, 768 F.2d at 1085.  Accordingly, petitioner is not entitled to relief on any such claim.

8           G.  Sentencing Error

9           In his final claim, petitioner contends that his sentence has been "enhanced more

10   than once arising out of the same conduct, and that is unconstitutional."  (P&A at consecutive p.

11   4.)  Respondent argues that this claim is unexhausted.  Generally, a state prisoner must exhaust

12   all available state court remedies either on direct appeal or through collateral proceedings before

13   a federal court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1).  However,

14   "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the

15   failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. §

16   2254(b)(2).  As set forth below, this court will recommend that petitioner's claim of sentencing

17   error be denied on the merits, notwithstanding his failure to exhaust the claim.  See Cassett v.

18   Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may

19   deny an unexhausted claim on the merits when it is perfectly clear that the claim is not

20   "colorable").[3]

21          Claims of state sentencing error are not cognizable in a federal habeas corpus

22   proceeding.  Habeas corpus relief is unavailable for alleged errors in the interpretation or

23   application of state sentencing laws by either a state trial court or appellate court.  Cacoperdo, 37

24   F.3d at 507 ("[t]he decision whether to impose sentences concurrently or consecutively is a

25   _____

26          [3]  In order to be colorable, a claim must have both legal and factual support.  Beaudry
     Motor Co. v. Abko Properties, Inc., 780 F.2d 751, 756 (9th Cir. 1986).

                                            23

matter of state criminal procedure and is not within the purview of federal habeas corpus);

Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993).  So long as a state sentence "is not based

on any proscribed federal grounds such as being cruel and unusual, racially or ethnically

motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of

state concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  The Ninth

Circuit has specifically refused to consider on habeas review claims of erroneous application of

state sentencing law by state courts.  See, e.g., Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989)

(holding that whether assault with a deadly weapon qualifies as a "serious felony" under

California's sentence enhancement provisions is a question of state sentencing law and does not

state a federal constitutional claim).  Petitioner's contention that his sentence was enhanced more

than once based upon the same conduct is a claim of sentencing error that is not cognizable in

this federal habeas proceeding.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served and filed within ten days after service of the objections.  The parties are advised

/////

/////

/////

/////

/////

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: November 9, 2007.

4

5  _____

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:8
   atterbury1809.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26